**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Patrick THOMPSON, Defendant–
Appellant.**

**No. 94–3533.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1995.

Decided July 26, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 22, 1995.

Frank Fabbri, III, St. Louis, MO, argued, for appellant.

John J. Ware, U.S. Attys. Office, St. Louis, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, and FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Appellant Patrick Thompson appeals from his sentence of 120 months imprisonment after pleading guilty to conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988), and two counts of assaulting a federal officer, in violation of 18 U.S.C. § 111 (1988). Thompson raises three issues on appeal: (1) whether he deserves an additional one-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(b); (2) whether he is entitled to a two-level minor participant decrease in offense level under 3B1.2(b); and (3) whether the district court [1] erred in finding that his assault inflicted "serious bodily harm" for purposes of USSG § 2A2.2. We have jurisdiction over this appeal pursuant to 18 U.S.C. §§ 3742(a)(1) and (2), and we affirm Thompson's sentence.

## I. BACKGROUND

On August 11, 1992, Patrick Thompson purchased a one-way ticket to Los Angeles, California, at the St. Louis Lambert International Airport. Drug Enforcement Administration Task Force Detective (TFD) Robert Thompson observed Thompson and two companions, Randolph Rooks and Harry Ellis, who fit a description of known drug traffickers. TFD Thompson approached the three men and asked to search Thompson's luggage. Thompson consented, and the ensuing search located $16,843.00 cash in Thompson's carry-on luggage.

When all three men gave conflicting answers regarding the ownership, amount, and purpose of the money, TFD Thompson seized the cash as drug-related currency and asked

---

1. The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

Thompson to accompany him to the DEA interview room. While TFD Thompson was counting the money, Thompson stepped out of the interview room into the hallway where he spoke briefly to Rooks. Thompson then returned to the interview and struck TFD Thompson in the back of the head with his closed fist. The blow caused TFD Thompson to fall forward and strike his face on a desk, knocking him unconscious.

Thompson grabbed the cash and fled into the hallway. DEA Special Agent Joel Carter, who was across the hallway, attempted to stop Thompson. Thompson bowled Agent Carter over and fled through the lobby area. Thompson and Rooks were apprehended shortly thereafter by the airport police outside the terminal and charged with assault and robbery. The state charges were later dismissed due to subsequent federal prosecution, and Thompson and Rooks were later released from custody pending warrant applications. TFD Thompson was hospitalized for observation and treated for a concussion, blackened eyes, and abrasions and cuts to his head and face. He was later released the same day. Agent Carter required no medical treatment.

On October 22, 1992, the DEA office in St. Louis, Missouri, received information that two individuals, one of whom was identified as Thompson, had entered a Federal Express Office in Los Angeles, California, in order to ship two packages to an individual named Brian Turner in St. Louis. The DEA obtained a search warrant and discovered that the two packages contained approximately 476 grams of cocaine. The DEA then attempted a controlled delivery of the packages to the intended recipient at his St. Louis address. The operation failed when Rooks, who was observed leaving Turner's apartment shortly before the delivery, noticed several police cars in the area conducting surveillance and phoned Turner in order to warn him not to accept the packages.

Rooks, who was later sentenced on related charges, was interviewed by DEA Special Agent Robert Howell on June 3, 1993. During that interview, Rooks informed Special Agent Howell that Thompson had been flying to Los Angeles in order to purchase approxi-

mately 27 ounces of cocaine when he was stopped by TFD Thompson. Thompson was charged on April 1, 1994, with one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and two counts of assaulting a federal officer in violation of 18 U.S.C. § 111.

Thompson was arrested on April 19, 1994, and pleaded guilty to all three charges on October 4, 1994. At the sentencing hearing the district court granted Thompson a two-level reduction for his acceptance of responsibility under USSG § 3E1.1(a), but refused to grant him an additional one-level reduction under USSG § 3E1.1(b) because Thompson failed to timely provide the Government with complete information regarding his role in the offenses or to timely notify the Government of his intention to plead guilty. The district court also denied Thompson a two-level reduction as a minor participant under USSG § 3B1.2(b), and enhanced his offense level an additional four points under USSG § 2A2.2(b)(3)(B) based on its finding that Thompson's attack on TFD Thompson constituted aggravated assault and inflicted "serious bodily injury."

The net effect of these determinations elevated Thompson's total offense level from level 21 (with a guideline range of 77 to 96 months) to level 26 (with a corresponding guideline range of 120 to 150 months). Thompson was subsequently sentenced to 120 months imprisonment. This appeal follows.

## II. DISCUSSION

### A. USSG § 3E1.1

■ Thompson argues first that the district court erred by denying him an additional one-level reduction for acceptance of responsibility under USSG 3E1.1(b). Where an offender has already qualified for a two-level decrease under USSG § 3E1.1(a) and the offense level has been determined to be sixteen or greater, USSG § 3E1.1(b) provides that "an offender earns an additional one-level reduction in [his] offense level if [he] has timely provided the government with complete information about [his] in-

volvement in the offense, or if [he] has timely notified authorities that [he] intends to plead guilty so the government can avoid preparing for trial and the court can efficiently allocate its resources." *United States v. Patterson,* 11 F.3d 824, 825 (8th Cir.1993) (per curiam) (footnote omitted). " 'A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.' " *United States v. McQuay,* 7 F.3d 800, 802 (8th Cir.1993) (quoting USSG § 3E1.1, comment. (n. 3)).

■ Thompson argues that he is entitled to the additional one-level reduction based on both his alleged timely provision of complete information to the Government concerning his role in the offense and his alleged timely notification of his intention to plead guilty. "We give great deference to a district court's decision about acceptance of responsibility and will reverse the decision only for clear error." *United States v. Schau,* 1 F.3d 729, 731 (8th Cir.1993) (per curiam).

■ The district court found that Thompson was not entitled to an additional one-level reduction pursuant to USSG § 3E1.1(b). We find no clear error. Thompson did not provide the Government with information regarding his role in the offenses until after he had both pleaded guilty and received use immunity through his proffer agreement. At that point, both the investigation and Thompson's prosecution were effectively completed. As such, Thompson "did not volunteer any information to the government in time for it to be useful to the government in its investigation." *McQuay,* 7 F.3d at 802; *see also Schau,* 1 F.3d at 731. We agree that Thompson did not timely provide the Government with complete information regarding his role in the offenses.

Thompson similarly failed to timely notify the Government of his intention to plead guilty. Instead, Thompson pleaded guilty the morning of his scheduled trial date and did not notify the Government of his intention to do so until the previous Friday. By then, the Government had essentially already completed its preparations for trial. Such notice did not allow the Government to avoid having to prepare for trial, nor did it allow the district court to effectively allocate its resources. *McQuay* 7 F.3d at 803 (notifica-

tion of intention to plead guilty two days prior to scheduled trial date was not timely for purposes of USSG § 3E1.1(b)); *see also United States v. Robinson,* 14 F.3d 1200, 1203 (7th Cir.1994) (guilty plea four days prior to scheduled trial was not timely for purposes of USSG § 3E1.1(b)).

## B.  USSG § 3B1.2(b)

■ USSG § 3B1.2(b) provides for a two-level reduction in offense level if the defendant was a minor participant in the crime. The USSG Application Notes define a minor participant as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2, comment. (n. 3). Thompson argues that his role in the conspiracy was relatively minor compared to that of his drug suppliers. We review the district court's denial of a two-point minor participant reduction under the clearly erroneous standard. *United States v. Rayner,* 2 F.3d 286, 288 (8th Cir.1993).

■ The district court found that Thompson was not entitled to a two-point minor participant reduction. We agree. Thompson bears the burden of proving his entitlement to the minor participant reduction. *United States v. Dinges,* 917 F.2d 1133, 1135 (8th Cir.1990). This Court rejected an argument similar to Thompson's in *United States v. Ellis,* 890 F.2d 1040 (8th Cir.1989), when it observed, "the fact that another participant supplied the drugs does not mean that [the defendant's] role was only minor." *Id.* at 1041. Taken to its logical conclusion, Thompson's position would mean that every participant in every drug distribution scheme would be presumably entitled to a minor participant reduction so long as he or she were able to prove the existence of an upstream drug supplier. We reject this logic and conclude that Thompson did not meet his burden of proving his entitlement to this reduction. "Participants in the distribution of drugs often have distinct and independently significant roles. Those distinguishing factors will not always be relevant in determining sentences." *Id.* While Thompson apparently had upstream drug suppliers in Los Angeles, "the record reveals no evidence establishing that [Thompson] was any less culpable than those unidentified actors whose

actual roles were unknown." *United States v. Williams,* 890 F.2d 102, 104 (8th Cir.1989).

■ Even if Thompson were able to prove that his suppliers were relatively more culpable, our decision would remain the same. A defendant who is concededly less culpable than his codefendants is not entitled to the minor participant reduction if that defendant was "deeply involved" in the criminal acts. *United States v. West,* 942 F.2d 528, 531 (8th Cir.1991). The record clearly supports the district court's finding that Thompson was not a minor participant, but, rather, a highly culpable offender who was deeply involved in the drug distribution scheme. Rooks stated that he and Thompson were partners in an ongoing drug distribution scheme in which Thompson repeatedly traveled to Los Angeles in order to obtain cocaine to convert into crack and distribute in St. Louis. The district court specifically relied on uncontroverted evidence that Thompson was seized on August 11, 1992, with approximately $16,000.00 to purchase cocaine for distribution in St. Louis, that Thompson assaulted TFD Thompson, and that Thompson admitted that he mailed a package containing approximately 476 grams of cocaine from Los Angeles to St. Louis on October 22, 1992. In sum, we find no clear error.

### C. USSG 2A2.2

■ Thompson next argues that the district court should have sentenced him under USSG § 2A2.4 for obstructing or impeding an officer, rather than for aggravated assault under USSG § 2A2.2. The Application Notes define "aggravated assault" as "a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (i.e. not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony." USSG § 2A2.2, comment. (n. 1). Thompson bases his argument on the assertion that his assault of TFD Thompson involved none of these three requirements. In a related argument, Thompson argues that the district court erroneously enhanced his sentence four levels under USSG § 2A2.2(b)(3)(B) for inflicting serious bodily injury on TFD Thompson. We " 'accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.' " *United States v. Parker,* 989 F.2d 948, 951 (8th Cir.) (quoting 18 U.S.C. § 3742(e)), *cert. denied,* —— U.S. ——, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993).

The district court found that Thompson's assault of TFD Thompson involved both serious bodily injury and intent to commit another felony. We agree. The Guidelines define serious bodily injury as "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG § 1B1.1, comment. (n. 1(j)). TFD Thompson's injury required both hospitalization, albeit briefly, and involved the impairment of his mental faculties when he was knocked unconscious. In addition, the record fully supports the district court's conclusion that Thompson struck TFD Thompson in order to facilitate the robbery of the seized drug proceeds. The fact that the state robbery charge was subsequently dismissed is irrelevant. We again find no clear error.

### III. CONCLUSION

For the above-mentioned reasons, we affirm Thompson's sentence.