_____

No. 95-3940
_____

United States of America,          *
                                    *
          Appellee,                 *
                                    *  Appeal from the United States
     v.                             *  District Court for the
                                    *  Northern District of Iowa.
Shaun Thomas,                       *
                                    *
          Appellant.                *


_____

Submitted:  April 9, 1996

Filed:  August 21, 1996
_____

Before MAGILL, Circuit Judge, HENLEY, Senior Circuit Judge, and
     LOKEN, Circuit Judge.

_____

MAGILL, Circuit Judge.


     Shaun Thomas appeals his conviction of possession with intent
to distribute more than five grams of cocaine base, in violation of
21 U.S.C. § 841(a)(1) (1994), and of using and carrying a firearm
during and in relation to a felony drug trafficking crime, in
violation of 18 U.S.C. § 924(c) (1994).  Because there was
insufficient evidence to establish that Thomas violated 18 U.S.C.
§ 924(c), we vacate his conviction on that count and remand for
resentencing.  With respect to Thomas's other challenges, we affirm
the district court.[1]

---

[1]The Honorable Michael J. Melloy, Chief Judge, United States
District Court for the Northern District of Iowa.

## I.

On March 25, 1994, the Waterloo, Iowa, Police Department received information from a motel employee that several people from Chicago had checked into the Rodeway Inn in the early hours of the morning. According to the motel employee, the guests had made numerous telephone calls early in the day and appeared to be conducting drug transactions from their room and their automobile, a white Oldsmobile Delta 88. The room was registered to Charmane Powells and the automobile to Shaun R. Thomas. Based on this information, the police ran a check on Powells and Thomas and discovered that both had suspended Illinois driver's licenses.

At a police department meeting before the 3-11 p.m. shift, officers were directed to "attempt to locate" the white Oldsmobile Delta 88. Suppression Tr. at 5-7. The officers were informed that the occupants of this vehicle were suspected of trafficking drugs at the Rodeway Inn and that their licenses had been suspended by the State of Illinois.

At approximately 8:30 p.m., Officer Frank Krogh observed Thomas's automobile parked outside the West Coast Connection, a bar on the north end of Waterloo that had been the site of frequent drug deals. I Trial Tr. at 267. It was described by police officers as the hot spot for crack cocaine dealing in Waterloo in March 1994. Suppression Tr. at 6, 59.

Krogh set up surveillance on the white Oldsmobile from a distance. During this time, he observed Thomas going back and forth between the automobile and the bar. Shortly after 9 p.m., Thomas and Steve Marshall left the West Coast Connection, entered Thomas's Delta 88, and drove away with Thomas behind the steering wheel. Krogh followed.

While following the defendants, Krogh observed that neither Thomas nor Marshall was wearing a safety belt, a violation of Iowa law. Krogh followed the vehicle for a short distance and then stopped the defendants in a well-lit area. Krogh approached the driver's side of the vehicle and asked Thomas for his driver's license. Thomas produced an Arkansas driver's license. The passenger identified himself as Steven Dixon.

Krogh took Thomas's Arkansas driver's license and called the dispatcher to run a check on the defendant's driving status in Illinois and Arkansas. By this time, Officer Mark Meyer had arrived at the scene. Krogh asked Thomas whether he had any guns, drugs, or things of that nature in the automobile. Thomas said that he did not.

Krogh then asked Thomas if he could search the automobile. Thomas responded in the affirmative by stating either that he did not mind or that he did not care. I Trial Tr. at 276; Suppression Tr. at 45-46. Thomas was told to get out of the car, and Krogh did a pat-down search of the defendant for weapons. A search of the automobile revealed a white napkin between the front seats. Inside the white napkin, Krogh found 0.29 grams of crack cocaine. A further search of Thomas's person revealed additional crack cocaine concealed under his baseball cap. Police arrested Thomas and Marshall.

After placing Thomas and Marshall in custody, officers obtained a search warrant for the Rodeway Inn motel room. The room search uncovered 39.65 grams of crack cocaine hidden between the mattress and the box spring of one of the two beds in the room. There were two packages of cocaine--one containing loose crack cocaine and the other containing numerous, individually packaged pieces of crack cocaine. The police found a loaded 9mm semi-automatic handgun concealed under a pillow. The room also contained plastic bags used to package crack cocaine and a piece of

-3-

luggage containing Thomas's clothing.

Following the execution of the search warrant at the Rodeway
Inn, officers returned to the police station and interviewed Thomas
and Marshall after advising them of their Miranda rights. Both
individuals denied any knowledge of crack cocaine at the hotel
room. Indeed, both denied staying at the hotel room even though
their clothing had been found scattered about the room.

During the interview, Thomas admitted coming to Waterloo with
a third person named Charmane Powells, whom he knew by the nickname
of "Shoe." Marshall likewise confirmed that he had come to
Waterloo with the defendant and Powells. However, Marshall stated
that he and Powells had stayed at a house located on the west side
of Waterloo the previous evening, while the defendant had stayed at
the motel. Later, on the morning of March 26, 1995, Marshall was
taken from the jail to identify the house at 1116 West Fifth
Street, Waterloo, Iowa, as the house where he and Charmane Powells
had spent the previous evening.

Based on information provided by Marshall and information law
enforcement officials had received from other sources, officers
applied for a search warrant for the residence of Keisha Morris,
1116 West Fifth Street in Waterloo. Pursuant to a warrant,
officers searched the residence and located a large quantity of
crack cocaine in three separate locations in the house along with
a large quantity of money, plastic bags used to package crack
cocaine, and other drug paraphernalia.[2]

On June 24, 1994, Thomas, Marshall, and Powells were indicted
on one count of possession with intent to distribute fifty grams or

---

[2]Powells testified at trial that Thomas had left the package
of crack cocaine found in the upstairs, southeast bedroom. The
cocaine base weighed 4.52 grams.

-4-

more of cocaine base.  Three months later, a superseding indictment was filed against the three defendants, substituting a charge for possession with intent to distribute five grams or more of cocaine base, in violation of 18 U.S.C. § 841(b)(1)(B)(iii), and for using and carrying a firearm during and in relation to a felony drug trafficking offense, in violation of 18 U.S.C. § 924(c).  Thomas filed a motion to suppress the evidence seized as a result of the traffic stop made by Krogh, which the court denied.

Powells subsequently entered into a plea agreement with the government and testified against Thomas at trial.  Powells testified that he observed Thomas with a small package which contained crack cocaine.  Thomas placed this package in the bedroom in the upstairs of the Morris residence.  Police seized this package during the execution of the warrant at the Morris residence.

Powells also testified that he had observed Thomas coming out of the Rodeway Inn carrying a brown paper bag.  Powells testified that the brown paper bag which the defendant was carrying was very similar to the one which was government's exhibit 13.  Government exhibit 13 was the brown paper bag which contained the large quantity of controlled substances found at the motel room.

Thomas also testified at trial.  The defendant admitted that he stayed in Room 207 at the Rodeway Inn and slept in the bed where the drugs and gun were found.  Thomas acknowledged that he had gone to the West Coast Connection with Marshall and that he had been stopped while driving his car after leaving the West Coast Connection.  Thomas contended that he had purchased the crack cocaine found in his hat at the West Coast Connection. He admitted that he lied to the officers when he denied that he had ever been in the motel room.  Thomas admitted that his luggage and clothing were in the motel room, although he denied any knowledge of the drugs, firearm, or drug paraphernalia located in the room or the

-5-

crack found between the car seats.

On cross-examination, the prosecutor tried to establish that Thomas had given trial testimony inconsistent with testimony he had given at prior hearings held in the case, including a suppression hearing. At the beginning of cross-examination, the prosecutor asked the defendant whether he had ever lied under oath in a court proceeding and Thomas answered "no." II Trial Tr. at 598. The prosecutor then inquired as to whether the defendant had been under oath when he "previously testified in August of 1994" and whether he had been honest at that time. II Trial Tr. at 600. The defendant responded that "yes" he had been under oath and that, as far as he knew, he had been honest on that occasion. Later, the prosecution questioned Thomas about several inconsistent statements he had made, including statements previously made under oath. In the course of trying to pin down the defendant on testimony which appeared inconsistent to previous testimony, the prosecutor asked the following question:

> And do you recall testifying at the suppression hearing--excuse me--at the previous hearing in this matter concerning how long you had been at that hotel or what you had been at that hotel for?

II Trial Tr. at 608. After cross-examination continued for several more minutes, the court adjourned trial for the day. At the time court was recessed, defendant's counsel moved for a mistrial based upon the prosecutor's withdrawn mention of the word "suppression" in reference to a prior hearing while cross-examining the defendant. The court denied the motion for mistrial, but agreed to give a curative instruction.

Thomas was subsequently convicted. He moved for a new trial, which the district court denied. At sentencing, the district court found that Thomas had obstructed justice through perjurious testimony and applied a two level sentence increase. The court

-6-

sentenced Thomas to 151 months in prison for the drug offense, and an additional 60 months in prison for the § 924(c) firearm conviction.

Thomas now appeals, arguing that the district court committed four reversible errors.  First, Thomas claims that the district court erred in refusing to exclude evidence stemming from the police stop of Thomas's vehicle.  Second, Thomas argues that the government, in making improper and prejudicial references at trial to Thomas's testimony at the suppression hearing, deprived him of a fair trial.  Third, in light of Bailey v. United States, 116 S. Ct. 501 (1995), the district court erred in failing to grant Thomas's motion for judgment of acquittal in light of the insufficient evidence supporting the § 924(c) firearms count. Fourth, the district court erred in applying a two level sentence increase for obstruction of justice based on Thomas's trial testimony.  After careful review of these claims, we affirm the district court except with respect to Thomas's § 924(c) conviction, which we vacate and remand for resentencing.

## II.

Thomas argues that the evidence stemming from the automobile search should have been excluded.  He predicates this argument on two assertions.  According to Thomas, the district court erred in finding (1) that the police made a valid traffic stop, and (2) that Thomas gave voluntary and knowing consent to the subsequent search of his automobile.  We review the district court's legal conclusions de novo and its factual findings for clear error.  See United States v. Johnson, 64 F.3d 1120, 1124 (8th Cir. 1995), cert. denied, 116 S. Ct. 971 (1996).

## A.

As a general matter, police may stop an automobile where there

is probable cause to believe that a traffic violation has occurred. See Whren v. United States, 116 S. Ct. 1769, 1772 (1996); United States v. Cummins, 920 F.2d 498, 500-01 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991).  Probable cause exists where an officer objectively has a reasonable basis for believing that the driver has breached a traffic law.  See Cummins, 920 F.2d at 501. Under this objective test, so long as police have probable cause to believe that a traffic violation has occurred, the stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot.

The district court found that Krogh stopped Thomas's automobile because he observed that the driver and front seat passenger were not wearing their seat belts and because he had reason to believe that the driver did not have a valid driver's license.  Thomas challenges these findings, arguing that the police had no valid reason for making the traffic stop.

Police stopped Thomas's automobile around 9:00 in the evening. According to Thomas, Krogh could not have observed whether Thomas was wearing his seat belt because it was dark outside and Krogh was some distance away.  Under these conditions, Thomas contends, it was impossible for Krogh to make such a determination.  We disagree.

At the suppression hearing, neither Thomas nor Marshall claimed that they were wearing their seat belts.  In fact, the police testimony was not challenged in any fashion.  We are not willing to reverse the district court's evaluation of the evidence on the thin observation that in March at 9 p.m. the sun had set in Waterloo, Iowa.  Interior lights of Thomas's automobile, street lights, and headlights of other automobiles could have allowed Krogh to observe whether Thomas had his seat belt fastened or not. We do not believe the district court's fact-finding to be clearly erroneous.

-8-

**B.**

Thomas also argues that the district court erred when it found that he had given valid consent for the police to search his automobile and his person. Even without probable cause or a warrant, police may search an area if they obtain voluntary consent from someone possessing adequate authority over the area. See United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990). A driver of an automobile has sufficient authority to give consent for its search. See United States v. Eldridge, 984 F.2d 943, 948 (8th Cir. 1993).

Thomas makes two challenges to the district court's suppression hearing determination that he gave the police his consent to search. First, he argues that the police never sought his consent to conduct the searches. Second, accepting that Thomas was asked and indicated consent, this consent was not voluntary and therefore inadequate to validate the search. We do not find either of these arguments persuasive.

At the suppression hearing, Krogh and Meyer testified that they asked for and received Thomas's consent before they searched the automobile. Suppression Tr. at 17. Thomas offered a different account of the events, stating that the police conducted the pat-down search and the automobile search without asking his consent. On appeal, Thomas asserts that the district court should have found his version of the searches more credible, pointing to an apparent discrepancy between the police testimony at the initial detention hearing and the police testimony at the suppression hearing.

Meyer stated at the initial detention hearing that he heard Krogh ask Thomas for permission to search, whereas at the suppression hearing Meyer stated that he requested that Krogh ask Thomas for consent. We are not convinced that the police testimony at the two hearings is at odds or, if such a discrepancy does

-9-

exist, that it warrants overturning the district court's firsthand assessment of the evidence.  It is uniquely the role of the district court to judge the credibility of witnesses.  See United States v. Hankins, 931 F.2d 1256, 1258-59 (8th Cir.), cert. denied, 502 U.S. 886 (1991).

Thomas also challenges the voluntariness of any consent that he might have given for the police search.  Consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973), and not the result of "duress or coercion, express or implied." Id. at 227.  To determine whether consent was voluntary, we look at the totality of the circumstances surrounding a particular case, considering both the characteristics of the accused and the details of the police questioning.  Id. at 226.  We will "'affirm the trial court's decision unless it is not supported by substantial evidence, it evolves from an erroneous conception of the applicable law, or we are left with the firm conviction that a mistake has been made after having considered the entire record.'"  United States v. Ware, 890 F.2d 1008, 1011 (8th Cir. 1989) (quoting United States v. Wallraff, 705 F.2d 980, 987 (8th Cir. 1983)).

Thomas asserts that the coercive circumstances of the traffic stop, with an intimidating show of force by the police and the seizure of Thomas's person, tainted any consent offered by Thomas.  As Thomas succinctly stated his position, he "was a young man in a strange town surrounded by numerous police officers at night." Appellant's Br. at 11.  The age of the consent giver, the intimidating actions of police, the time of day, and the consent giver's familiarity with the area are proper considerations under the totality of the circumstances evaluation of whether consent is voluntary.  In this instance, however, they are not sufficient to establish that Thomas acted against his will when he told police they could search his automobile.

The district court's conclusion is supported by substantial evidence. The court heard Thomas testify and found him to be old enough and intelligent enough to understand the situation he was in and the consequences of allowing the search. Thomas had been stopped in a well-lit area and had been detained only briefly before Krogh asked permission to search the automobile. At the suppression hearing, Thomas discounted the intimidating effect of the police, stating that he was "sort of surprised" by the number of police around him. Suppression Tr. at 113. He also characterized the exchange between the police and himself as cordial. In these circumstances, the district court properly found Thomas's consent to be voluntary.

## III.

While cross-examining Thomas, the prosecutor mentioned that Thomas had testified at an earlier suppression hearing. Immediately upon speaking the words "suppression hearing," the prosecutor corrected himself and recharacterized the suppression hearing as "the previous hearing." II Trial Tr. at 608. Thomas moved for a mistrial, arguing that it was improper and highly prejudicial for the prosecutor to convey to the jury that Thomas had sought to exclude evidence. The court denied the motion, but gave the jury a curative instruction immediately prior to closing arguments.[3] Thomas argues it was both improper and highly prejudicial for the prosecution to convey to the jury that Thomas had sought to exclude evidence and that the district court erred in denying his motion for mistrial.

---

[3]The district court instructed the jury that "during the cross-examination of Mr. Thomas, you heard reference to earlier testimony by Mr. Thomas. You need not and should not concern yourself about the proceedings or the nature of that prior hearing. Specifically, you are advised that no evidence, statements, or testimony has been suppressed in any way in this case." III Trial Tr. at 745.

An instance of trial error constitutes reversible error when the prosecutor's actions are, in fact, improper and have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.  See United States v. Emmert, 9 F.3d 699, 701 (8th Cir. 1993), cert. denied, 115 S. Ct. 101 (1994).  The decision to deny a motion for a mistrial falls within the discretion of the district court and will be reversed only if that discretion is abused.  See United States v. Wold, 979 F.2d 632, 635 (8th Cir. 1992).

We agree that the prosecutor's mention of the suppression hearing was improper.  The defendant has a Fourth Amendment right to be free of unreasonable searches and seizures which is diminished when the prosecution mentions before the jury that the defendant attempted to exercise that right by excluding evidence.  Thomas, however, was not denied a fair trial as a consequence of this trial error and, therefore, we conclude that the district court was not in error.

In evaluating whether a trial error resulted in prejudice to the defendant, we consider the cumulative effect of such misconduct, the strength of the properly admitted evidence of the defendant's guilt, and the curative actions taken by the district court.  See Emmert, 9 F.3d at 701.  Considering the quantum of evidence presented by the prosecution, the brief, inadvertent, and quickly corrected error by the prosecution is insignificant.  In addition, the district court issued a corrective instruction to the jury, assuring them that all the evidence was before them.  In combination, these factors eliminated the risk that Thomas was prejudiced.  Cf. United States v. Farmer, 73 F.3d 836, 844 (8th Cir.) (where prosecution merely asks an improper question, which was immediately stricken, there was no substantial effect on the outcome of the case), cert. denied, 116 S. Ct. 2570 (1996); United States v. Turk, 21 F.3d 309, 312-13 (8th Cir. 1994) (where prosecution witness testified in contravention of the district

-12-

court's motion in limine, jury was admonished that they were to disregard such testimony and that such admonishment cured any harm caused by the improper testimony).

## IV.

Police, in the course of searching the motel room, discovered a loaded 9mm semi-automatic handgun under a pillow on the bed. Thomas was charged with violating 18 U.S.C. § 924(c), which increases the defendant's sentence for using a firearm during a drug offense.[4] Following the completion of the government's case and again at the close of evidence, Thomas moved for judgment of acquittal on the firearms charge. The district court denied the motion and submitted the charge to the jury, which convicted Thomas.

Subsequent to the district court's decision, the Supreme Court issued its opinion in Bailey v. United States, 116 S. Ct. 501 (1995). In Bailey, the Supreme Court held that § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Bailey, 116 S. Ct. at 505 (emphasis added). Active use includes brandishing, displaying, bartering, striking with, as well as firing or attempting to fire a firearm. Id. at 508. Significantly, the Court expressly precluded the mere storage of a weapon near drugs or drug proceeds from the scope of active use. Indeed, active use does not necessarily encompass a gun which is hidden where it could be grabbed and used if necessary. Id.

---

[4]18 U.S.C. § 924(c)(1) states that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years . . . ."

On appeal, Thomas argues that there was insufficient evidence to prove that he actively employed the 9mm gun found in the motel room. We agree. In light of Bailey, the facts of this case do not allow Thomas to be convicted under § 924(c)(1). At the time of his arrest, the firearm was well outside of Thomas's control. In no way can it be said that a firearm concealed under a pillow in an unoccupied motel room constitutes active employment.

The government asks that we remand for resentencing. The government draws our attention to the fact that once Thomas's § 924(c) conviction is reversed, a two level upward adjustment may be appropriate under § 2D1.1(b)(1) of the sentencing guidelines. Under § 2D1.1(b)(1), it is a specific offense characteristic if "a dangerous weapon (including a firearm) was possessed" by the defendant and warrants a two level sentence increase.

The district court did not consider this sentencing provision because, at the time he was sentenced, Thomas was ineligible for a § 2D1.1(b)(1) sentence increase. The sentencing guidelines prohibits double counting and therefore, because of Thomas's conviction on the § 924(c) firearm charge, the district court was precluded from applying a § 2D1.1(b)(1) increase. See U.S.S.G. § 2K2.4, comment. (n.2). In light of our decision to vacate Thomas's § 924(c) conviction, however, this double counting concern is eliminated and it is appropriate to remand to the district court to allow it to resentence Thomas. See United States v. Roulette, 75 F.3d 418, 426 (8th Cir. 1996) ("The prohibition against applying the two level enhancement is no longer applicable, because the firearm sentence on Count 4 has been set aside."); see also United States v. Clements, 86 F.3d 599, 600-01 (6th Cir. 1996) (vacating § 924(c) conviction and remanding for consideration of a two level increase under U.S.S.G. § 2D1.1(b)(1)); United States v. Lang, 81 F.3d 955, 963 (10th Cir. 1996) (same); United States v. Fennell, 77

-14-

F.3d 510, 510-11 (D.C. 1996) (per curiam) (same).[5]

We therefore reverse Thomas's § 924(c) conviction, vacate his sentence, and remand the case to the district court, which should consider whether a sentence enhancement under U.S.S.G. § 2D1.1(b)(1) is warranted.

**V.**

Finally, Thomas argues that the district court erred by refusing to grant a three level sentence reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and by assessing a two level sentence increase for obstruction of justice under U.S.S.G. § 3C1.1. These sentencing decisions rest entirely on the factual determinations of the district court, which we review for clear error. See United States v. Evans, 51 F.3d 764, 766 (8th Cir. 1995); United States v. Oakie, 12 F.3d 1436, 1444 (8th Cir. 1993).

Under the sentencing guidelines, a three level reduction in the sentence level is warranted when "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). The burden rests with the defendant to establish that he accepted responsibility. See United States v. Morales, 923 F.2d 621, 628-29 (8th Cir. 1991). Thomas did not present evidence that suggests that he is entitled to this reduction.

The sentencing guidelines set out a list of considerations useful in determining whether the defendant has accepted

---

[5]We note that Bailey does not impact the application of § 2D1.1(b)(1). Under § 2D1.1(b)(1), a sentence enhancement is required if a dangerous weapon was "possessed." The Supreme Court's analysis in Bailey focuses on the word "use" found in § 924(c) and determined that "use" must be "active employment." See United States v. Betz, 82 F.3d 205, 210 n. 3 (8th Cir. 1996).

responsibility.  See U.S.S.G. § 3E1.1, comment. (n.1).  This list includes truthfully admitting the conduct comprising the offense of conviction, voluntarily terminating or withdrawing from criminal conduct, voluntarily surrendering to authorities promptly after commission of the offense, and voluntarily assisting authorities in recovering the fruits and instrumentalities of the offense.  Id. Thomas presents no evidence that he has satisfied any of these factors.  The police apprehended Thomas in a traffic stop and discovered the firearm and crack cocaine in the motel room without Thomas's assistance.  In fact, except for the crack cocaine police found hidden in his hat, Thomas continued to deny any connection to the drugs.  Based on this evidence, the district court reasonably refused to find that Thomas had accepted responsibility for his criminal behavior.

The district court found that Thomas had, in fact, obstructed justice by testifying falsely under oath, and the court applied a two level sentence enhancement under U.S.S.G. § 3C1.1.  Section 3C1.1 states that the offense level may be adjusted upward for obstruction of justice if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense."  It is well accepted that perjury at trial amounts to obstruction of justice within the meaning of § 3C1.1. See U.S.S.G. § 3C1.1, comment. (n.3(b)); United States v. Pena, 67 F.3d 153, 157 (8th Cir. 1995); United States v. Dyer, 910 F.2d 530, 533 (8th Cir.), cert. denied, 498 U.S. 907 (1990).

A witness commits perjury if he "'gives false testimony concerning a material matter with the wilful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'"  United States v. Berndt, 86 F.3d 803, 810 (8th Cir. 1996) (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993)).  The district court must review the evidence and make independent finding, by a preponderance of the evidence, of perjury

in order to impose a sentence enhancement for obstruction of justice. See Berndt, 86 F.3d at 810; United States v. Darden, 70 F.3d 1507, 1548 (8th Cir.), cert. denied, 116 S. Ct. 1449 (1996). We review a district court finding of obstruction of justice for clear error. See United States v. Big Crow, 74 F.3d 163, 166 (8th Cir. 1995).

At the sentencing hearing, the trial court found that, at a minimum, several of Thomas's statements under oath were "outright fabrications," that he "lied about those matters," and that "those [matters] were material to the charges that were before the court." Sentencing Tr. at 34. Much of the trial testimony made by Thomas stood in direct contradiction with Powells' account of events. Police observations and the evidence found in the motel room further undermined Thomas's statements. Given this weight of evidence against Thomas, the district court was not clearly erroneous in concluding that Thomas had committed perjury and, therefore, should receive a sentence increase for obstruction of justice.[6]

## VI.

For the reasons stated, we affirm the district court in all respects except Thomas's conviction under 18 U.S.C. § 924(c). We vacate his sentence and remand the case to the district court for resentencing.

---

[6]We hold that the district court was not clearly erroneous in making the predicate findings to the sentence enhancement. On remand, the district court is free to reevaluate its sentencing determination in light of the evidence presented at the rehearing.

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.