No. 96-3515

United States of America,                    *
                                             *
        Plaintiff - Appellee,                *
                                             *
        v.                                   *    Appeal from the United States
                                             *    District Court for the
Robert Chatman,                              *    District of Nebraska
                                             *
        Defendant - Appellant.               *


Submitted: March 11, 1997

Filed: July 17, 1997


Before McMILLIAN, Circuit Judge, HANSEN, Circuit Judge, and
MAGNUSON,* District Judge.


MAGNUSON, District Judge.


On May 14, 1996, Appellant Robert Chatman ("Chatman") pleaded guilty to possession with intent to distribute 500 grams or more of a mixture or substance containing cocaine, a violation of Title 21, United States Code, Section 841(a)(1). The district court[2] sentenced Chatman to 120 months of imprisonment, four years of supervised release, and a $50 special assessment. In this appeal, Chatman challenges the decision of the district court to limit Chatman's cross-examination of his arresting officer during a hearing on his motion to suppress his traffic stop and the

---

* The HONORABLE PAUL A. MAGNUSON, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

[2] The HONORABLE LYLE E. STROM, United States District Judge for the District of Nebraska, adopting the Report and Recommendation of the HONORABLE Kathleen A. Jaudzemis, United States Magistrate Judge for the District of Nebraska.

subsequent search of his vehicle.  Chatman contends he should have been allowed to question the officer as to his veracity and bias.  In addition, Chatman appeals two decisions of the district court during sentencing.  Chatman challenges the district court's denial of a one-level reduction for acceptance of responsibility and the district court's denial of a two-level reduction for a minor role in the offense.  We affirm.

I

A federal grand jury returned an indictment against Appellant Robert Chatman ("Chatman") on April 20, 1995, charging Chatman and three co-defendants with  possession with intent to distribute 500 grams or more of a mixture or substance containing cocaine in violation of 21 U.S.C. § 841(a)(1).  At his arraignment, Chatman entered a plea of not guilty.

Chatman filed a motion to suppress the traffic stop of his vehicle and the subsequent search of that vehicle.  United States Magistrate Judge Kathleen A. Jaudzemis heard argument on the motion to suppress during July, August, and November and issued a Report and Recommendation on January 23, 1996, recommending that Chatman's motion be denied.

The Magistrate Judge made findings of fact with respect to the stop and search of Chatman's vehicle.  According to the Report and Recommendation, Nebraska State Patrol Trooper Andy Allen observed two vehicles heading east on Interstate Highway 80 between Aurora and Kearney on April 16, 1995.  Allen observed a white Chrysler, followed by a blue Cadillac.  Believing both vehicles to be speeding, Allen activated his radar antenna.  Allen testified that the radar screen indicated that both vehicles were traveling at 75 miles per hour, ten miles over the 65 miles per hour speed limit.  The radar device does not produce any kind of record of speed

2

checks.

Allen observed the race and gender of the driver of each vehicle, then turned his squad car around at the next highway median. The white Chrysler was driven by a white male and the blue Cadillac was driven by a black male. Allen testified that he observed the Cadillac's brake lights activated, and noted that the Cadillac's speed reduced to approximately 40 miles per hour. Allen passed the Cadillac, pausing beside the car to confirm the appearance of the driver. Allen then sped ahead and caught up to the white Chrysler. Allen followed the Chrysler until it pulled over to the side of the highway. Allen then exited his vehicle and flagged the Cadillac over to the side of the road.

After retrieving the license and registration materials from the driver of the Chrysler, Allen approached the blue Cadillac which was being driven by Appellant Chatman. Upon approaching the vehicle, Allen asked Chatman for his license and vehicle registration. Allen also asked Chatman where he was heading, a question he asks every person that he stops. According to Allen, Chatman said that he was traveling to Chicago for a wake for Waldo Jackson.

Allen stated that he noticed a female sitting in the passenger side of the vehicle, but did not see any other passengers. The rear side windows and rear window of the Cadillac were darkly tinted. Allen said that when he leaned to the window to talk with Chatman, he smelled the aroma of alcohol.

Allen returned to his vehicle to check the validity of the drivers' licenses. Allen made out a warning and a citation for the driver of the white Chrysler and a warning ticket for speeding for Chatman. Nebraska State Troopers are not required to keep copies of warning tickets and Allen did not retain copies of the tickets

3

that he issued. In addition, the incident was not videotaped. Allen testified that the videotape camera normally in his vehicle was being repaired at the time of the stop. After making out the tickets, Allen gave one to the driver of the white Chrysler and let the driver depart.

Allen then returned to Chatman's vehicle. According to Allen, he asked Chatman whether the woman seated next to him was his wife. Chatman responded that it was his girlfriend. Allen once again noticed the smell of alcohol, although he did not seek any contraband.

Allen then noticed for the first time the presence of two men in the back seat of the vehicle. Allen testified that he became suspicious of the group for several reasons. Allen stated that it was quite unusual for people who are stopped to remain perfectly still and silent and that such behavior often indicates that inappropriate or illegal activity has occurred. In addition, Allen stated that it seemed odd that the group would be traveling from San Diego to Chicago for a wake on Easter Sunday dressed in casual clothes. Allen testified that Chatman gave his consent for Allen to search the trunk. Allen observed loose clothing strewn about the truck as well as papers, wiper fluid, and jumper cables. Allen did not observe any luggage, despite Chatman's earlier statement to Allen that the group did have luggage. During the search, all the passengers remained within the vehicle. Allen stated that during his six years in law enforcement, this was the first time that the passengers had not exited the vehicle to watch.

Allen used his shoulder microphone to call for a back-up. Allen then walked back to the driver's side window and asked Chatman where the luggage was located. Chatman said that he did not have any luggage. Allen did not observe any luggage in the vehicle, only a pager, cellular phone, and a comb. Allen returned

4

to the trunk and observed a lump in the floor of the trunk. Allen lifted the carpet on the bottom of the trunk, and saw that the wing-nut holding down the spare tire had been removed, creating a lump. Allen testified that he observed a brown paper bag underneath the spare tire. Allen lifted the spare tire and found a Ohaus electronic scale inside the paper bag. Allen then radioed for a drug dog to be brought to the scene.

Allen testified that he asked Chatman to step from the car and asked him to sit in the squad car. In the squad car, Allen asked Chatman about the scale. According to Allen, Chatman denied any knowledge of the scale. Allen stated that he smelled alcohol on Chatman and gave him a preliminary breath-test which did not show an illegal amount of alcohol.

Allen left Chatman in the police vehicle, returning to the Cadillac. Allen asked the names of the individuals in the car and requested their identification. Linda Brooks was seated in the front seat and did not possess any identification. Rodney Bruce Green was seated in the back and provided a California identification, while Ernest James Thomas, the other backseat passenger, provided an old military identification.

Allen also asked the passengers about their destination. All three said that they were going to a wake for Waldo, but none knew whether Waldo was old or young, or how he had died. The passengers also referred to Waldo as "Waldo Johnson" even though Chatman had called him "Waldo Jackson." Shortly thereafter, Allen's back-up, Trooper Rife, arrived with a drug dog. Allen related his suspicions to Rife.

Rife and Allen conducted a preliminary search of the trunk of the vehicle. Allen testified that such searches are usually done before a canine sniff to ensure that the dog is not injured by any

5

dangerous objects or that the dog would not damage any valuables. Allen and Rife pulled up the carpet on the bottom of the trunk and discovered four vacuum sealed packages. According to Allen, the packages had been sliced open and were leaking white powder. The troopers also discovered an additional package containing a leafy substance they believed to be marijuana. The troopers placed the three males under arrest and transported all four individuals to Grand Island, Nebraska. The Cadillac was towed to Grand Island.

On March 22, 1996, the district court adopted the findings of fact of the magistrate judge, finding that the stop and search of the vehicle were appropriate and reasonable. The district court denied Chatman's motion to suppress. On May 8, 1996, Chatman's counsel requested that the district court re-open the record in order to allow further investigation into the potential bias of the officer who stopped and searched Chatman's vehicle. Chatman sought information on Allen's past history of traffic stops, including past citations and warnings, Allen's log books, tapes of conversations with dispatchers regarding Chatman's arrest, and training and training manuals received by Allen on drug couriers and searches. The district court granted Chatman leave to file a motion to re-open the record. Chatman came once again before the district court on May 14, 1996. At that time, the district court denied Chatman's motion to reopen the record. Chatman pled guilty to Count I of the indictment, charging him with possession with intent to distribute 500 grams or more of a mixture containing cocaine, a violation of 21 U.S.C. § 841(a)(1). Chatman reserved his right to appeal the district court's denial of his motion to suppress. The district court accepted Chatman's plea and ordered the Probation Office to prepare a Presentence Report.

At sentencing, Chatman objected to two elements of the Presentence Report. Chatman objected to the Probation Office's failure to grant Chatman a two-level reduction for being a minor

6

participant in the crime. Chatman also claimed that he was entitled to a one-level reduction for timely informing the government of his intent to plead. The district court denied both of Chatman's objections and sentenced him to 120 months imprisonment, four years supervised release, and a $50 special assessment. Chatman appeals both the denial of his motion to suppress and the denial of his objections to the presentence report.

## II

Chatman first claims that the district court erred by limiting his cross examination of Trooper Allen during the motion to suppress hearing, preventing Chatman from inquiring into Allen's veracity or possible bias. During the motion to suppress, Chatman sought to inquire as to Allen's past traffic stops, his mind-set during the stop of Chatman, and the purposes and practices of the Nebraska State Patrol in dealing with drug trafficking. The Magistrate Judge sustained all of the government's objections to such questioning, preventing Chatman from making any substantive inquiry. In addition, the district court denied Chatman's request to re-open discovery into areas relating to Allen's veracity or bias.

In reviewing a district court's decision whether a traffic stop was pretextual, we apply a "clearly erroneous" standard. United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995) (citing United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1970 (1995)). While a pretextual traffic stop is constitutionally impermissible, see United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993), "[i]t is well established . . . that any traffic violation, no matter how minor, provides a police officer with probable cause to stop the driver of the vehicle." Pereira-Munoz, 59 F.3d at 791 (citations

7

omitted).  In deciding whether a stop was pretextual or based on probable cause, the district court applies an "objectively reasonable" standard. Id. (citing United States v. Miller, 20 F.3d 926, 929 (8th Cir.), cert. denied, 115 S. Ct. 226 (1994)). "Under this objective test, so long as police have probable cause to believe that a traffic violation has occurred, the stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot." United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996).  The Supreme Court has made it clear that the subjective motivations of an officer in making a traffic stop are irrelevant to the determination of whether that stop was appropriate.  See Whren v. United States, 116 S. Ct. 1769 (1996).

In this case, the district court, through the adoption of the Report and Recommendation of the Magistrate Judge, made a determination as to the existence of probable cause for the stop of Chatman's vehicle.  While the evidence of speeding was contested by Chatman, the district court found the testimony of Trooper Allen more believable than that of Chatman or his passengers.  In addition, the district court credited the testimony of a technician who substantiated Allen's statements about repairs to the video camera and helped account for the absence of video camera from the automobile.  The district court also found corroboration for Allen's version of the events in the incident report, which was consistent with Allen's testimony concerning his stop of both Chatman and the white Chrysler.  While the district court was free to draw negative inferences from the absence of a videotape of the incident or copies of traffic citations, it was not required to make such findings.

Chatman also argues that the district court's factual findings are clearly erroneous because the traffic stop logically could not have occurred in the way in which Allen described, given the speeds

the automobiles were traveling and the amount of time that elapsed from the time Allen passed Chatman's vehicle until Allen flagged down Chatman's car. However, a logical inconsistency only exists if Chatman's version of the facts is adopted. While Chatman claims he was following the white Chrysler with his cruise control set at fifty-five miles per hour, Allen testified that Chatman's speed slowed to forty miles per hour once Allen started to follow him. In addition, Chatman speculates about the amount of time Allen would have spent sitting in his squad car behind the white Chrysler before exiting the squad car and the speed with which he would have approached the stopped Chrysler. This sort of evidence is the province of cross-examination and the subject of a credibility determination by the district court. Based on the record, we cannot say that the district court abused its discretion in adopting the facts as articulated by Allen. See U.S. v. Caldwell, 97 F.3d 1063, 1067 (8th Cir. 1996) (stating that court should review findings of historical fact for clear error).

Chatman contends that he should have been allowed to cross-examine Allen about his past traffic stops, his training, and his approach to drug interdiction. Chatman argues that such an inquiry would not address whether the stop was pretextual, but Allen's possible motive or bias for stating that Chatman had exceeded the speed limit. In support of his claims, Chatman cites United States v. Barnes, 798 F.2d 283 (8th Cir. 1986). In Barnes, the district court prohibited a defendant from cross-examining a witness regarding earlier statements that contradicted the witness's trial testimony. Id. We held that such a limitation violated the defendant's right to confrontation under the Fourth Amendment. id. While the district court had already made a credibility determination regarding the witness's statements as part of the defendant's motion to dismiss, we found that "the same evidence would also have been important to the jury's determination of whether [the witness] was a credible witness." See id. at 289. As

9

such, the defendant should have been allowed to present such evidence to the jury. Id.

In this case, there is no evidence suggesting that Allen had made contradictory statements or that his testimony was somehow untrustworthy. Chatman had an opportunity to cross-examine Allen about this particular stop and Allen's version of the facts. While Chatman takes exception to Allen's version, there is no inconsistent prior statement or omission on Allen's part that suggests the traffic stop was anything other than legitimate. In addition, Chatman was allowed to inquire into one of Allen's prior traffic stops which Chatman suggested was pretextual. Chatman asked Allen about a prior case heard in the State District Court of Hamilton County, Nebraska, in which evidence obtained by Allen was suppressed. The state court suppressed the evidence based on Allen's detention of a suspect for too long with out a reasonable suspicion that the defendant was about to engage in criminal activity. The district court in this case did not find the evidence of the prior trial compelling, stating that the state court explicitly found that Allen's reasons for the stop were not pretextual. The district court in this case did not find Chatman's allegations compelling and appropriately limited cross-examination.

No evidence suggested that Allen's asserted reasons for the stop were pretextual. The district court was within its power in limiting Chatman's cross-examination of Trooper Allen and in denying Chatman's motion to expand the record.

**III**

The Sentencing Guidelines provide for a two-level reduction in offense category if a defendant can demonstrate that he was a "minor participant" in the offense. U.S.S.G. § 3B1.2(b). According to the Application Notes, a "minor participant" is "any

10

participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.B. § 3B1.2, comment (n.3). The burden is on the defendant to demonstrate that he is entitled to the reduction. United States v. Dinges, 917 F.2d 1133, 1135 (8th Cir. 1990). Chatman contends that he was merely a "mule" in a drug distribution scheme and that he is entitled to the reduction. A district court's factual determination regarding the role played by a defendant in a criminal activity is reviewed under the "clearly erroneous" standard. See United States v. Fregoso, 60 F.3d 1314, 1329 (8th Cir. 1995) (citations omitted); United States v. Ellis, 890 F.2d 1040, 1041 (8th Cir. 1989).

Chatman argues that he was a "minor participant" compared to the suppliers of the drugs. Chatman contends that he is being unfairly denied a reduction based on the fact that the suppliers have not been identified. We have previously rejected such arguments. In United States v. Thompson, 60 F.3d 514, 517 (8th Cir. 1995), the defendant argued that his role "was relatively minor compared to his drug suppliers." We stated that the fact that other parties supplied the drugs did not render the defendant's role minor.

> Taken to its logical conclusion, Thompson's position would mean that every participant in every drug distribution scheme would be presumably entitled to a minor participant reduction so long as he or she were able to prove the existence of an up-stream drug supplier. We reject this logic and conclude that Thompson did not meet his burden of proving his entitlement to this reduction. "Participants in the distribution of drugs often have distinct and independently significant roles. Those distinguishing factors will not always be relevant in determining sentences."

Id. (quoting Ellis, 890 F.2d at 1141).

In this case, the district court found that Chatman was not a "minor participant" in the illegal narcotics activity. The

11

district court based its decision on several factors including the fact that Chatman was using his own vehicle.  In addition, the district court found that the amount of narcotics found in the vehicle indicated that the drugs were intended for distribution.  The lack of luggage or clothing for the trip suggested to the district court that Chatman intended to underwrite the expenses of the entire trip.  We find no clear error in the findings of the district court.

**IV**

Sentencing Guideline section § 3E1.1 provides a two-level reduction in offense level for "acceptance of responsibility."  An additional one-level reduction is available where the defendant's offense level is greater than sixteen and the defendant

> timely notif[ies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

U.S.S.G. § 3E1.1(b)(2).  While the district court granted Chatman a two-level reduction for acceptance of responsibility under section 3E1.1(a), the court denied Chatman's request for an additional one-level decrease under § 3E1.1(b)(2).  Chatman appeals that denial, arguing that he is entitled to the addition reduction because he provided sufficient notice of his intention to plead guilty.  The district court's denial of a reduction for acceptance of responsibility is reviewed for clear error. See United States v. McQuay, 7 F.3d 800, 801 (8th Cir. 1993).

Both parties agree that Chatman stated on several occasions prior to trial that he intended to plead guilty.  However, Chatman did not actually sign a plea agreement until the day of trial.  While Chatman's counsel indicated his willingness to plead guilty, the delay in actually executing a plea agreement forced the government to prepare for trial.  In United States v. Thomas, 60

F.3d at 516-17, we affirmed the district court's denial of a reduction for acceptance of responsibility where the defendant failed to enter a plea until the day of trial. The defendant in Thomas had notified the government of his intention to plead on the Friday before the trial was to begin, but did not execute the plea until the day of trial. Id. We found that such notification did not qualify for a reduction because "[b]y then, the Government had essentially already completed its preparations for trial." Id. at 517; accord United States v. McQuay, 7 F.3d at 800 (denying reduction for defendant who did not file plea agreement until first day of second trial, despite fact that government did not need to conduct further trial preparation); United States v. Nomeland, 7 F.3d 744 (8th Cir. 1993) (denying reduction for defendant who did not plead until immediately before trial date).

While Chatman indicated his intention to plead earlier in the process than did the defendant in Thomas, plea negotiations between Chatman and the government continued during the period up until the day of trial. If plea negotiations broke down, the government would have been forced to put on its case. In such an instance, "the government had essentially already completed its preparations for trial." Thomas, 60 F.3d at 517. We cannot say that the district court committed clear error by denying the additional reduction for acceptance of responsibility.

The judgment of the district court is affirmed.

A true copy.

        Attest:


                CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

13