# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1613
_____

United States of America

*Plaintiff - Appellee*

v.

Robert David Boedigheimer

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: May 20, 2016
Filed: August 2, 2016

_____

Before RILEY, Chief Judge, and COLLOTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Robert David Boedigheimer was convicted by a jury of laundering and conspiring to launder money in violation of 18 U.S.C. §§ 1957 and 1956(h), and making a false statement in violation of 18 U.S.C. § 1001. The basis for the charges was that Boedigheimer had laundered drug proceeds received from his brother-in-law, Brandon Lusk, through his law firm, and then lied to an IRS agent about his financial arrangements with Lusk. When Lusk was later investigated by authorities,

Boedigheimer, acting as his lawyer, advised him to hide the nature of their financial relationship. Boedigheimer argues on appeal that the district court[1] erred in denying his motion for a mistrial and that his sentence is substantively unreasonable.

The asserted ground for Boedigheimer's motion for a mistrial was an unfinished question that a prosecutor attempted to ask while cross-examining him at trial. The question, though never completed or answered because of a timely objection by defense counsel, indicated that Boedigheimer's former law partner had previously been charged with a crime:

Q. Okay. And you were concerned about questions that could implicate you in taxes.
A. No.
Q. Your former partner, Sam McCloud, had been prosecuted --
[DEFENSE ATTORNEY]: Objection, Your Honor. May we approach?

Following a bench conference, the district court denied Boedigheimer's request for a mistrial, but instructed the jury to disregard the prosecutor's question and explained that questions from attorneys are not evidence. After Boedigheimer renewed his objection following the jury verdict, the district court once again denied his request for a new trial. Boedigheimer argues that the prosecutor's question suggested that he previously associated with a man who had been charged with a crime, a suggestion he considers so prejudicial that the district court was obligated to grant him a mistrial.

When a prosecutor's question is improper, the test for whether a mistrial should be granted is whether the question deprived the defendant of a fair trial. See United States v. Riebold, 135 F.3d 1226, 1230 (8th Cir. 1998). "It is within the discretion of

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

the District Court, which is in a better position to judge the impact of the questions within the context of the trial, to determine whether a mistrial is proper," so we will reverse the denial of a mistrial only when the district court abused its discretion. United States v. Gundersen, 195 F.3d 1035, 1037 (8th Cir. 1999). We assume for purposes of this opinion that the question was, in fact, improper. We also acknowledge that curative instructions of the sort the judge gave can sometimes fail to have their intended effect, though our usual operating assumption is that "juries are conscientious and try their best to do what courts tell them to do." United States v. Farmer, 73 F.3d 836, 844 (8th Cir. 1996). Even so, we cannot believe that this abbreviated question not only deprived Boedigheimer of a fair trial, but that it was an abuse of discretion for the district court to conclude otherwise.

As an initial matter, the single question at issue – occurring in the course of an eleven-day trial – was half-finished and unanswered. Moreover, the other inculpatory evidence the jury heard was extensive, such that "[c]onsidering the quantum of evidence presented by the prosecution, the brief, inadvertent, and quickly corrected error by the prosecution is insignificant." United States v. Thomas, 93 F.3d 479, 487 (8th Cir. 1996). Regarding the money laundering, the jury learned that Boedigheimer gave Lusk a job at his law firm that was entirely self-financed: Lusk himself provided the money for his salary, telling Boedigheimer that he "want[ed] a legitimate paycheck." Boedigheimer also took out and paid back two $10,000 cash loans from Lusk. And there was plenty of evidence to suggest that Boedigheimer knew that the money coming from Lusk constituted the proceeds of drug dealing. Quite apart from the suspicious size of the sums paid from Lusk to Boedigheimer ($85,000 in total, all in cash), Lusk testified that, prior to making these payments, he had told Boedigheimer that he was selling marijuana and bragged to Boedigheimer about how much he was making from it. Boedigheimer's knowledge could also be inferred from his attempts to prevent law enforcement from learning about his financial transactions with Lusk. Lusk testified that just before he met with the United States Attorney's Office as part of a proffer agreement, Boedigheimer urged him not to reveal their payroll arrange-

ment.  Finally, with respect to the false statement count, the jury heard that Boedigheimer told an IRS special agent that Lusk was employed to do marketing at his firm, without mentioning that the job was a sham financed by Lusk himself.  In the face of this evidence, the district court acted well within its discretion to rule that a question implying that Boedigheimer had associated with a person later charged with criminal activity, even if improper, did not require a new trial.

Boedigheimer also challenges his sentence.  The parties agree that Boedigheimer's advisory guidelines range was properly calculated as 87–108 months' imprisonment.  The district court sentenced Boedigheimer to only 60 months' imprisonment, but he says the court abused its discretion by not imposing an even shorter sentence.  See Gall v. United States, 552 U.S. 38, 46 (2007) (holding that appellate courts can find sentences unreasonable only if they constitute an abuse of discretion).

Boedigheimer first argues that his sentence is out of step with the sentences received by the other members of the drug dealing operation Lusk was involved in.  He claims that, with the exception of the leader of Lusk's drug ring, who got a sentence of 200 months, the sentences received by the other drug trafficking conspirators were the same as or lower than his own, despite the fact that he was not directly involved in selling drugs.  But what the district court found especially culpable about Boedigheimer's conduct was the fact that he abused the trust Lusk placed in him when he was acting as Lusk's attorney.  Early on in the investigation, before law enforcement learned that Lusk had sold marijuana, the government entered into a proffer agreement with him pursuant to which his statements to authorities would not be used directly against him – on condition that he told them the complete truth.  But Boedigheimer, who at the time was acting as one of Lusk's attorneys, advised Lusk not to say anything during his proffer session with the United States Attorney's Office about their financial arrangement, warning Lusk that "it could ruin

me." At the session, which Boedigheimer attended, Lusk followed this advice and by so doing lost the benefit of the agreement he had entered into.

As the district court said at sentencing, "putting your own personal interests ahead of your client is a very serious matter and clearly is very aggravating." This was a legitimate factor for the district court to consider, and enough to justify the sentence it imposed, even if it resulted in a sentence that was harsh in comparison to others involved in the drug trafficking operation.

Boedigheimer also argues that the district court punished him for being a lawyer, which he says is not a proper basis for giving him a harsher sentence. On reviewing the transcript, however, there is no indication that the district court did so. Rather, it punished him for abusing the trust of his client. Perhaps he would not have been in a position to have done so had he not been a lawyer, but the fact remains that the punishment was for the abuse of trust, not for his profession.

The judgment of the district court is affirmed.

_____