**UNITED STATES of America, Appellee,**

v.

**Phillip EMMERT, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**John Michael MILLER, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Charles Edward SHANNON, Appellant.**

**UNITED STATES of America, Appellant,**

v.

**Charles Edward SHANNON, Appellee.**

Nos. 93–1091, 93–1094, 93–1095 and 93–1200.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1993.

Decided Nov. 16, 1993.

Rehearing Denied in No. 93–1091 Dec. 23, 1993.

Rehearing Denied in No. 93–1095 Jan. 26, 1994.

**I.**

Miller, Emmert, and Shannon urge reversal of their convictions on the ground that the prosecutor's remarks during closing arguments aroused the jury's prejudice and denied them a fair trial. Prosecutorial misconduct is reversible error when the prosecutor's remarks are in fact improper and such remarks have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir. 1985).

The district court denied the defendants' motions for a mistrial, finding the prosecutor's comments improper but not prejudicial in light of the court's curative instruction to the jury. Whether to grant a motion for a mistrial lies within the district court's discretion, and we will not reverse its decision absent an abuse of discretion. *Id.*

During his rebuttal closing argument the prosecutor stated that a government witness "was very candid, very open and very honest in her testimony." Rebuttal T. 7. We agree with the district court that the prosecutor improperly vouched for the witness's credibility. *See United States v. Young,* 470 U.S. 1, 7–8, 105 S.Ct. 1038, 1042–43, 84 L.Ed.2d 1 (1985) (prosecutors may not express personal beliefs as to truth or falsity of any testimony or evidence).

Having found the comments improper, we consider three factors to determine whether such misconduct was prejudicial to the defendants: (1) the cumulative effect of such misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) the curative actions taken by the trial court. *Hernandez,* 779 F.2d at 460.

Defense counsel objected shortly after the improper remark was made, and the judge gave the following curative instruction to the jury before the prosecutor continued his argument:

> To the extent that [the prosecutor] has suggested to you a belief that the witness Debra Jelinek gave truthful testimony, you should disregard that argument and give it

Leon Spies, Iowa City, IA, argued, for Emmert.

David Butler, Des Moines, IA, argued, for Miller.

Alfredo Parrish, Des Moines, IA, argued, for Shannon.

Ronald Kayser, U.S. Attorney's Office, Des Moines, IA, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

John Michael Miller, Phillip Emmert, and Charles Edward Shannon were convicted of conspiracy to distribute methamphetamine. 21 U.S.C. § 846. Miller was also convicted of possession with intent to distribute, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, and Shannon was convicted of attempt to possess with intent to distribute, 21 U.S.C. §§ 841(a)(1), 846, 18 U.S.C. § 2. Miller was sentenced to 188 months imprisonment, Emmert to 324 months imprisonment, and Shannon to 292 months imprisonment. All three defendants appeal their convictions, and Emmert also appeals his sentence. None challenges the sufficiency of the evidence. We affirm.

no consideration. It is not for counsel to determine and advise you as to belief about whether a particular witness gave truthful testimony. It's for you to decide that based on all of the evidence and the instructions I've given you on the law.

Rebuttal T. 17.

The prosecutor's statement was an isolated comment on the witness's veracity, and there was no cumulative detrimental effect. The court gave the cautionary instruction soon after the prosecutor made the inappropriate remark and before he continued with his argument. The instruction specifically noted which comment was improper and why. Finally, apart from the prosecutor's closing arguments, evidence properly admitted at trial supports the defendants' convictions, and indeed they do not claim on appeal that the evidence is insufficient to support the verdicts. We conclude that the remarks were inappropriate but the error was not prejudicial so as to deprive the defendants of a fair trial. The district court properly denied the motion for a mistrial.

## II.

Emmert raises two additional arguments on appeal. He claims the prosecutor impermissibly commented during rebuttal closing argument on Emmert's failure to testify at trial, and asserts that the sentencing court erred in applying the sentencing guidelines.

■■■ A comment by the government on a defendant's failure to testify violates the Fifth Amendment privilege against self-incrimination. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). Even indirect comments may constitute error when they either manifest the prosecutor's intention to call attention to the defendant's failure to testify, or are such that the jury would naturally and necessarily take them as a comment on the defendant's failure to testify. *United States v. Durant,* 730 F.2d 1180, 1184 (8th Cir.1984). The prosecutor's remarks must be evaluated in the context of the argument itself and of the evidence introduced at trial. *Id.*

■■■ Emmert points to five instances during rebuttal summation when the prosecutor

stated "there is no evidence," "no testimony," or "no explanation" to counter the government's theory of the case. First, when summarizing one witness's testimony that Emmert's business was a cover for his drug activities, the prosecutor stated "[t]here's no evidence in this record that Steve Jelinek bought a single motorcycle part from Mr. Emmert. So it leads you to the conclusion, the inference of what is going on between these people and 230 phone calls over that period of time." Rebuttal T. 6.

Later the prosecutor reiterated the point:

Also there's *no evidence* in relation to these phone calls that Steve Jelinek is a member of any motorcycle club that would account for 240 telephone calls to Steve Jelinek during the conspiracy. Further, there's *no testimony* of the calls from Lisa's phone to Flop's [Emmert's] from December 21, 22, 23, just after the time the meeting takes place at Lonny Luloff's place when they get ready for the big load. *The evidence stands* that these phone calls are made between Lisa and Flop's phone all the way through December and into January during the time when you would most expect to have some contact from Mr. Emmert to Tom Jelinek as to what's going on. Significantly, January 15th, 1992, there's *no explanation* of the phone calls back and forth during the time when the load is expected to be coming in on the 16th.

Rebuttal T. 9 (emphasis added).

In denying defense counsel's motion for a mistrial, the district court concluded that the prosecutor had come close to the line of proper commentary but had not crossed it. The court cautioned the prosecutor not to make similar comments during the remainder of his rebuttal, and the prosecutor complied. Defense counsel declined the court's offer of a cautionary instruction to the jury. The district court subsequently denied a posttrial motion for a new trial, stating that the remarks, when viewed in context, were not indirect comments on Emmert's failure to testify and that the jurors probably did not perceive the remarks as a reference to his failure to take the stand.

We find that the district court did not abuse its discretion in so ruling. The prosecutor's comments were made in response to the closing argument of Emmert's counsel that Emmert operated a legitimate motorcycle business, that motorcycle club members often called him on his beeper, and that the phone calls listed in the toll call records were attributable to that lawful business. The prosecutor's remarks occurred in the context of summarizing a witness's testimony that Emmert's business was merely a front and that the witness often called him on his beeper and used a signal to indicate she wanted to arrange a drug transaction. The comments did not manifest an intention by the prosecutor to call attention to Emmert's failure to take the stand, nor were they such that the jurors would "naturally and necessarily" perceive them as a reference to Emmert's failure to testify.

We also reject Emmert's final argument that the district court erred in applying the sentencing guidelines. The record supports the court's findings on the amount of drugs attributable to Emmert and its determination of Emmert's criminal history score.

### III.

Shannon advances four additional arguments on appeal. He asserts error in the district court's admission of a prejudicial photograph and failure to instruct the jury on prior convictions of witnesses, entrapment, and the lesser included offense of possession of methamphetamine.

■ We find no merit in Shannon's argument that admission of the photograph resulted in prejudicial error. The photograph was taken the day of Shannon's arrest and showed that he had severe acne. The government introduced the photograph after witnesses testified without objection from defense counsel that severe acne is a common side effect of heavy methamphetamine use and that Shannon was often afflicted with this condition. The district court acted within its discretion in admitting the photograph.

■ We also find no error in the district court's failure to instruct the jury about prior convictions of witnesses. The court refused to give the instruction one day after jury deliberations had begun because the evidence of the convictions was received without objection for all purposes and was not restricted to impeachment, and the request for the instruction was untimely. The court did not abuse its discretion in refusing the instruction.

■ Shannon next argues that he was entitled to a lesser included instruction on simple possession of methamphetamine. Under Federal Rule of Criminal Procedure 31(c), a defendant may be found guilty of an offense necessarily included in the offense charged. An offense is a lesser included offense if its elements form a subset of the elements of the charged offense. *United States v. Cavanaugh,* 948 F.2d 405, 409 (8th Cir.1991) (citing *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989)).

The district court properly refused to give the instruction. The offenses of conspiracy to distribute methamphetamine and attempt to possess with intent to distribute methamphetamine do not require possession. Because possession is not an element of either charged offense, it cannot be considered a lesser included offense.

■ Shannon's final argument is more troublesome. Shannon contends he was entitled to a jury instruction on entrapment. The two elements that comprise a valid entrapment defense are government inducement of the crime and lack of predisposition by the defendant to engage in the criminal conduct. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). The entrapment defense does not extend to inducement by a private citizen. *United States v. Leroux,* 738 F.2d 943, 947–48 (8th Cir.1984). Once government inducement is shown, the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to being approached by government agents. *Jacobson v. United States,* — U.S. —, —, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992).

The defendant is entitled to a jury instruction on entrapment whenever there is sufficient evidence from which a reasonable jury could find entrapment. *Mathews*, 485 U.S. at 62, 108 S.Ct. at 886. The question of entrapment is generally one for the jury rather than the court. *Id.* at 63, 108 S.Ct. at 886.

The only possible source of inducement would be if Tim Stanek made a phone call to Shannon on January 18, 1992. Stanek turned himself in to police in Garden City, Kansas, on January 17. He turned over the truck he was driving which contained twenty-five pounds of methamphetamine. At that point Stanek became a government agent and agreed to cooperate in a controlled delivery of the methamphetamine to his partners. The delivery was to take place in Des Moines, Iowa.

On January 18, at the direction of law enforcement agents, Stanek made a phone call from Des Moines stating that his truck had broken down and asking that one of his partners come pick him up. The testimony is disputed whether Stanek called Shannon or whether he called Tom Jelinek and Jelinek called Shannon. Stanek testified on cross-examination by Shannon's attorney that he called Shannon. Trial T. 1159. Jelinek, Shannon, and Agent Vogel of the DEA all testified that Stanek called Jelinek. Trial T. 117–18, 255, 259–60, 1292, 1746, 1798. Both Shannon and Jelinek arrived in Des Moines to pick up the truck and were arrested.

To find entrapment the jury must credit Stanek's testimony that Stanek called Shannon. But Shannon himself testified that Jelinek, not Stanek, called him on January 18 and asked if he would go to Des Moines with Jelinek to pick up Stanek and the broken-down truck. We do not think that a reasonable jury, having disbelieved the testimony of Shannon and others that Stanek did *not* call Shannon, could then find entrapment of Shannon based on Stanek's testimony that Stanek *did* call Shannon.

Shannon's defense at trial was consistent with denial of the criminal act but not with entrapment. When seeking an entrapment instruction from the district court, Shannon put forth two theories of government induce-ment through private citizens. He first pointed out that Stanek acted as an agent of the government, which paid for his meals, expenses, hotel bill, and telephone calls after Stanek surrendered to police and agreed to participate in a controlled delivery of the methamphetamine. Shannon failed, howev-er, to assert any facts to show that Stanek ever contacted Shannon at the behest of the government.

Shannon next argued that *Jelinek* should be considered a government agent as of the time Stanek called Jelinek and Jelinek called Shannon on January 18. Shannon's theory was that the government knew Jelinek did not have the equipment to retrieve Stanek's truck from Des Moines and therefore could predict that when Stanek called Jelinek with such a request, Jelinek would have to call Shannon for assistance. This speculation, however, does not constitute government in-ducement of Shannon via an unwitting inter-mediary. *See United States v. Hodges*, 936 F.2d 371, 372 (8th Cir.1991) (government ac-tion requirement of entrapment defense not satisfied absent evidence that government induced the unknowing intermediary to "do something he would not otherwise have done" in order to "net the distant defen-dant").

A defendant clearly is entitled to assert inconsistent defenses at trial, such as the defenses of denial and of entrapment. *See Mathews*, 485 U.S. at 65–66, 108 S.Ct. at 887–88. However, though the two defenses may be inconsistent *with each other*, an en-trapment instruction nonetheless must be justified by the evidence presented and must be consistent with *some* recognized theory asserted by the defense. No theory prof-fered by the defense supports an entrapment instruction.

Finally, the government cross-ap-peals the district court's refusal at sentencing to increase Shannon's offense level for ob-struction of justice. The government argued that Shannon's comments to a government witness just outside the courtroom to "stay strong" and "be quiet" were an attempt to intimidate the witness and warranted a two-level upward adjustment of Shannon's of-

fense level in the sentencing calculations. *See* U.S.S.G. § 3C1.1. The district court found that the statements were "somewhat ambiguous" and "not so plainly obstructive as to warrant a two-level increase." Sent. T. 97. We have reviewed the record and conclude that the district court properly declined the requested adjustment.

For the foregoing reasons, we affirm the judgments of the district court as to all three defendants.