NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0357n.06
CASE NO. 18-5265

**FILED**
Jul 15, 2019
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| KEITH GRIFFITH, | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BATCHELDER, McKEAGUE, and NALBANDIAN, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** A federal inmate appeals his sentence from a conviction for the bribery of a prison corrections officer. We AFFIRM.

**I.**

Keith Griffith was an inmate at the federal prison in Lexington, Kentucky, who bribed a guard named James Carrington to smuggle contraband into the prison for Griffith and an inmate-accomplice to sell to other inmates. This contraband included synthetic marijuana (known as "K2" or "spice"), tobacco, dietary supplements, MP3 players, and cellular telephones. Griffith's girlfriend, Stephanie Dukes, provided Carrington with the contraband items and—at Griffith's direction—paid cash to both Carrington and the inmate-accomplice's girlfriend.

This operation ran from May 2015 until February 2016, during which time Griffith, via Dukes, kept about $10,700 for himself, paid $11,192 to his accomplice (via the accomplice's girlfriend), and paid between $6,500 and $15,000 to Carrington. Carrington eventually turned himself in, revealed the entire operation, entered a guilty plea to a charge of accepting money in exchange for smuggling contraband into a federal correctional facility, in violation of 18 U.S.C.

§ 201(b)(2)(C), and received a sentence of 24 months in prison. Dukes also entered a guilty plea to a charge of bribing a public official, in violation of 18 U.S.C. § 201(b)(1)(C), and received a sentence of 18 months.

Griffith was charged with and entered guilty pleas to charges of conspiracy to commit offenses against the United States, 18 U.S.C. § 371, and bribery of a public official, 18 U.S.C. § 201(b). The inmate-accomplice cooperated with investigators and, in return, received a sentence of only five months. Evidence of this cooperation, specifically the accomplice's statements and testimony about other inmates' receipt of the contraband items, was provided to Griffith as part of his legal discovery, with Bates stamp numbering that was specific to only that discovery. When copies of those documents were later discovered circulating in the prison's general population, "outing" the accomplice as a "rat," the prison had to segregate the accomplice from the general population and, eventually, relocate him to another prison for his own safety. Griffith could not deny that the documents had come from him and that their circulation would endanger the accomplice, but claimed that the accomplice had been falsely accusing him of being the snitch, placing him in physical danger, and that he had revealed the documents only to disprove those accusations for his own safety—not in any attempt to threaten or endanger the accomplice or to obstruct justice.

At Griffith's sentencing, the district court started with a base-offense level of 12, added two levels for its involving multiple bribes and two more for the monetary amount of the bribes, to arrive at level 16. The court then added four levels because the offense involved bribery of a "public official in a sensitive position," U.S.S.G. § 2C1.1(b)(3), and two levels by finding that Griffith was in a leadership role, U.S.S.G. § 3B1.1(c), to get to level 22. And the court added two levels for obstruction of justice, U.S.S.G. § 3C1.1, while correspondingly denying Griffith's

request for an acceptance-of-responsibility reduction, for a total offense level of 24. Based on Griffith's criminal history category of III, the advisory range was 63 to 78 months. But upon considering the 18 U.S.C. § 3553(a) factors, the court determined that a "significant departure" would be appropriate and sentenced Griffith to a below-guidelines term of 48 months in prison.

Griffith appeals, challenging that sentence.

## II.

We review for abuse of discretion a challenge to the reasonableness of a sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). Here, Griffith challenges the procedural reasonableness of his sentence, arguing that the district court miscalculated his advisory guidelines range and misapplied the § 3553(a) factors. In reviewing such a challenge, we must ensure that the sentencing judge considered the defendant's arguments and had "a reasoned basis" for exercising his or her decision-making authority. *Rita v. United States*, 551 U.S. 338, 356 (2007). But "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Id.* at 357. Moreover, a sentence that is within the properly calculated advisory range is presumptively reasonable. *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc). And, so long as the district court considered the relevant § 3553(a) factors, its weighing or balancing of those factors is generally "beyond the scope" of our review. *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006).

Griffith argues that the district court erred by finding that Carrington, a federal corrections officer, was a "public official in a sensitive position." Under the Guidelines, the term "public official" is "construed broadly" and includes public officials as defined in 18 U.S.C. § 201(a)(1): "an officer or employee . . . of the United States, or any department, agency or branch of Government thereof . . . in any official function, under or by authority of any such department,

agency, or branch." *See* U.S.S.G. § 2C1.1 cmt. n.1(A). Moreover, "[e]xamples of a public official who holds a sensitive position include . . . a law enforcement officer . . . and any other similarly situated individual." § 2C1.1 cmt. n.4(B). Given that federal corrections officers are empowered to carry firearms and make arrests under certain conditions, *see* 18 U.S.C. § 3050, they are "similarly situated" to law enforcement and, therefore, within the class of people that the Guidelines intended to fall within this provision.

Griffith cites *United States v. McIntosh*, 983 F.2d 1070, 1992 WL 393163 at *8 (6th Cir. 1992) (table), for the proposition that a corrections officer is not a "public official in a sensitive position" for purposes of § 2C1.1(b)(3). In *McIntosh*, we found—albeit with minimal analysis— that a small-town police chief, appointed by a mayor who held all decision-making power, was not a "high-level decision maker" subject to an eight-level increase under the former version of this Guidelines provision. *Id.* (citing the former § 2C1.1(b)(2)(B)). Given the intervening substantive changes to this Guidelines provision and the distinguishing facts, *McIntosh*'s force or persuasiveness is questionable. On the other hand, we are convinced by three other circuits' opinions that have considered this question under similar facts and we join them in holding that a corrections officer is a public official in a sensitive position for purposes of § 2C1.1(b)(3). *See United States v. Dodd*, 770 F.3d 306, 312 (4th Cir. 2014); *United States v. Grosso*, 658 F. App'x 43, 46-47 (3d Cir. 2016); *United States v. Guzman*, 383 F. App'x 493, 494-95 (5th Cir. 2010).

Next, Griffith argues that the district court erred by finding that he was a leader or organizer of the scheme because, he claims, (1) he merely stepped in to replace another inmate who had already been running this scheme with Carrington before his involvement, (2) his role was virtually identical to that of his inmate-accomplice, and (3) he did not receive a larger share of the money, *citing United States v. Wilson*, 630 F. App'x 422, 432 (6th Cir. 2015) ("One notable (though not

4

dispositive) factor in determining leadership in a criminal enterprise is whether the purported leader claimed a right to a larger share of the fruits of the crime.").

For a § 3B1.1(c) enhancement, the "[f]actors relevant to control include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, and the degree of participation in planning or organizing the offense." *United States v. Tanner*, 837 F.3d 596, 603 (6th Cir. 2016) (internal quotation marks and alteration of citation omitted). But "[t]he primary question . . . is whether the defendant exerted control over at least one individual within a criminal organization." *Id.* Here, Griffith selected the types of contraband, instructed Stephanie Dukes to obtain that contraband and provide it to Carrington, determined the amount of the bribes that Dukes was to pay Carrington, directed Carrington to the "drop spots" within the prison, set the prices to be paid by the other inmates, and recruited his own mother to assist with the money transfers. The district court rejected the government's request for a four-level enhancement under § 3B1.1(a) but found that Griffith was "an organizer to some extent" and "it is very clear that he directed Dukes, so we have one person [whom] he directs," to conclude that the two-level enhancement applied. The district court's assessment of Griffith's decision-making role in the scheme and its determination that Griffith had recruited and controlled at least one person (Dukes) are supported by the record and reasonable. We have no basis to disagree, much less find clear error or abuse of discretion.

Next, Griffith argues that the district court erred by finding that he willfully or intentionally attempted to obstruct justice by disseminating copies of his accomplice's statements and testimony to authorities—admittedly portraying the accomplice as a "rat" and foreseeably endangering his safety—because, he claims, his motive was to prove that he, himself, was not the rat, and thereby

to protect his own safety. Under § 3C1.1, "[a] defendant has obstructed justice when his statements can be reasonably construed as a threat, even if they are not made directly to the threatened person." *United States v. Kamper*, 748 F.3d 728, 744 (6th Cir. 2014) (quotation marks and citations omitted) (upholding the obstruction-of-justice enhancement because a defendant told other inmates that a cooperating codefendant was a "rat" and a "snitch," knowing that rats and snitches "are not well-received in jails and in prisons" and, therefore, creating a danger); *see also United States v. Jackson*, 25 F.3d 327, 331 (6th Cir. 1994) (upholding the obstruction-of-justice enhancement when a defendant sought "retribution" against an investigating FBI agent even after the investigation and prosecution was complete).

Here, Griffith conceded at sentencing that the dissemination of this information to the prison's general population would foreseeably endanger the accomplice but insists that that was not his motive. His only motive, he claims, was to prove that he was not the rat and thereby protect his own safety. The district court did not believe him. Pointing to Griffith's recorded telephone calls, which were played at the sentencing hearing, the court found that Griffith did not merely intend to exonerate himself, but rather, intended to make the accomplice's cooperation known in the population where the accomplice was then located, explaining:

> [W]hen you listen to the [calls] . . . it's clear that . . . [Griffith is] looking for [the accomplice] . . . trying to figure out where he is. . . . [Griffith] wants to know where [the accomplice] is [i.e., which prison after his transfer] so he can disseminate this information in the right direction. That is antithetical to the notion that [Griffith was] just using it where he is for self protection. He's trying to get the word out. . . . [He] intended to make [the accomplice]'s cooperation known in the institution where [the accomplice] was housed.

R.41 at 54; PgID 197. The district court found that Griffith knowingly and willfully endangered the accomplice by revealing his cooperation with authorities, which satisfies the obstruction-of-justice enhancement. We find no clear error or abuse of discretion in this finding.

Griffith argues that the district court erred by refusing him a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b) on the basis that he obstructed justice, claiming that, even if he did obstruct justice, he nonetheless accepted responsibility, which entitles him to the reduction. "The district court's decision to deny [] an acceptance of responsibility reduction is entitled to great deference . . . [and] [w]e review [it] for clear error." *United States v. Genschow*, 645 F.3d 803, 813 (6th Cir. 2011). Ordinarily, an enhancement for obstruction of justice "indicates that the defendant has not accepted responsibility for his criminal conduct" and is not entitled to this reduction. § 3E1.1 cmt. 4. That is the case here.

But "[t]here may [] be extraordinary cases in which adjustments under both [obstruction of justice] and [acceptance of responsibility] may apply." *Id.* "The defendant has the burden of proving the extraordinary nature of his [] case," *United States v. Talley*, 443 F. App'x 968, 973 (6th Cir. 2011), based on the "relationship between his obstructive conduct and his acceptance of responsibility," *United States v. Gregory*, 315 F.3d 637, 640 (6th Cir. 2003).

> Courts have employed an exacting standard to determine whether a defendant has accepted responsibility after having obstructed justice. Appropriate considerations for determining whether a reduction is warranted include [1] the defendant's truthful admission of the offense conduct, [2] the defendant's voluntary assistance to authorities in resolving the offense, and [3] the timeliness of the defendant's conduct in affirmatively accepting responsibility for his actions.

*Id*. (quotation marks and citation omitted). Griffith argues that he timely and truthfully admitted his offensive conduct in his plea agreement, which was within four months of his indictment. But Griffith has not proven that this was "extraordinary," that he volunteered any assistance to the authorities, or how this otherwise ordinary guilty plea via plea agreement necessarily overcomes his obstruction of justice. *See United States v. Wilson*, 197 F.3d 782, 786-87 (6th Cir. 1999) ("The crux of Wilson's acceptance of responsibility argument is that he pled guilty to the offense in a timely manner[,] . . . [but he] is not entitled to a reduction for acceptance of responsibility simply

because of his timely plea."); *United States v. Arzola*, 528 F. App'x 487, 496 (6th Cir. 2013) ("We have [] found no error in the denial of an acceptance-of-responsibility adjustment where the defendant is properly assessed an obstruction of justice enhancement."). Griffith cannot overcome the "great deference" we give to the district court on this decision.

Finally, Griffith argues that the district court erred in its application of the § 3553(a) factors because his sentence was twice as long as that of any of the other members of this scheme. We have held that the requirement under § 3553(a)(6) "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" means "a national comparison, not a comparison of codefendants in the same case," though sentencing courts "are permitted, but not required, . . . to consider sentence disparities with respect to codefendants." *United States v. Walls*, 546 F.3d 728, 737, 737 n.3 (6th Cir. 2008). Here, contrary to Griffith's argument, the district court did consider the disparity of his sentence from his co-defendants and explained that it was due to his more extensive criminal history, the different offenses of conviction, and the fact that his co-defendants had cooperated with the investigation whereas he had obstructed justice and failed to accept responsibility. Griffith has not shown any error on the part of the district court in reaching this conclusion.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.